DAVID R. ZARO (BAR NO. 124334)
MATTHEW D. PHAM (BAR NO. 287704)
ALLEN MATKINS LECK GAMBLE
  MALLORY & NATSIS LLP
865 South Figueroa Street, Suite 2800
Los Angeles, California 90017-2543
Phone: (213) 622-5555
Fax: (213) 620-8816
E-Mail: dzaro@allenmatkins.com
        mpham@allenmatkins.com

EDWARD G. FATES (BAR NO. 227809)
ALLEN MATKINS LECK GAMBLE
  MALLORY & NATSIS LLP
One America Plaza
600 West Broadway, 27th Floor
San Diego, California 92101-0903
Phone: (619) 233-1155
Fax: (619) 233-1158
E-Mail: tfates@allenmatkins.com

Attorneys for Plaintiff
KRISTA FREITAG, Receiver

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| KRISTA FREITAG, Court-appointed permanent receiver for ANI Development LLC, American National Investments, Inc., and their subsidiaries and affiliates,<br><br>Plaintiff,<br><br>vs.<br><br>SARAH CHRISTINE PETERSON, an individual; CLAIRE LAUREN PETERSON, an individual; DEL MAR CAPITAL INVESTORS, LLC, a California limited liability company; and DOES 1 through 10, inclusive,<br><br>Defendants. | Case No. '25CV2257 BTM VET<br><br>**COMPLAINT FOR FRAUDULENT TRANSFER** |

LAW OFFICES
**Allen Matkins Leck Gamble
Mallory & Natsis LLP**

4918-1600-1122.1

Plaintiff Krista Freitag (the "<u>Receiver</u>"), the Court-appointed permanent receiver for ANI Development LLC, American National Investments, Inc., ANI License Fund, LLC ("<u>ANI License</u>"), and their subsidiaries and affiliates (collectively, the "<u>Receivership Entities</u>"), hereby brings the following Complaint (the "<u>Complaint</u>") against the above-captioned Defendants and alleges, on behalf of the Receivership Entities, as follows:

## I.     JURISDICTION AND VENUE

1. This Court has jurisdiction over this matter under 28 U.S.C. §§ 1345 and 1367(a), and the doctrines of ancillary and supplemental jurisdiction, in that this action arises from a common nucleus of operative facts as, and is substantially related to the original claims in, the Securities and Exchange Commission's pending enforcement action styled as *Securities and Exchange Commission v. Gina Champion-Cain, et al.*, United States District Court, Southern District of California, Case No. 3:19-cv-01628-TWR-AHG (the "<u>SEC Action</u>") and the pending related action styled as *Freitag v. Peterson, et al.*, United States District Court, Southern District of California, Case No. 3:21-cv-01620-TWR-AHG (the "<u>Peterson Clawback Action</u>").

2. This Court may properly exercise personal jurisdiction over Defendants pursuant to Federal Rule of Civil Procedure 4(k)(1)(A) and California Code of Civil Procedure section 410.10, which authorizes jurisdiction to the full extent permitted by the United States Constitution. Defendant Claire Lauren Peterson resides in California and executed instruments transferring the subject real property discussed herein. Defendants Sarah Christine Peterson and Claire Lauren Peterson (together, the "<u>Peterson Daughters</u>") each took title to real property located within this District and executed instruments transferring the subject real property, thereby purposefully availing themselves of the privileges and protections of California law. Defendant Del Mar Capital Investors, LLC is

organized under California law and maintains its principal place of business in this State.

3. Venue in the Southern District of California is proper under 28 U.S.C. § 1391 because (i) this action is an ancillary proceeding to the SEC Action and the Peterson Clawback Action, (ii) the Receiver was appointed in this District pursuant to the *Order; Granting the Parties' Joint Motion and Stipulated Request by All Parties for a Preliminary Injunction Order and Order (1) Freezing Assets; (2) Requiring Accountings; (3) Prohibiting the Destruction of Documents; and (4) Appointing a Permanent Receiver* entered by this Court in the SEC Action on September 3, 2019 (the "Appointment Order"), (iii) the property at issue is located in San Diego County, and the initial transfer alleged herein occurred in this District, (iv) two of the three named individual Defendants in this action reside in this District, and (v) a substantial amount of the acts, causes of action, proceedings, and injuries alleged herein occurred within this District.

## II.   PARTIES

4. The Receiver is the duly appointed permanent receiver for the Receivership Entities pursuant to the Appointment Order. Among other things, the Appointment Order calls for the Receiver to recover and marshal, for the benefit of creditors of and investors in the Receivership Entities, any and all assets which were owned, leased, occupied, or otherwise controlled by the Receivership Entities or were otherwise purchased with assets of the Receivership Entities. The Receiver holds exclusive authority and control over the assets of the Receivership Entities, including over the causes of action alleged herein, over which this Court has ancillary and supplemental jurisdiction.

5. The Receiver, for the benefit of the receivership estate of the Receivership Entities, holds the right, title, and interest to the Assigned Claims (as defined below) by a Court-approved assignment thereof to the Receiver from CalPrivate Bank ("CalPrivate"), which was formerly known as San Diego Private

Bank. The assignment of the Assigned Claims to the Receiver became effective upon Court approval in the SEC Action on April 24, 2023.

6. Defendant Claire Lauren Peterson is Peterson's daughter and, on information and belief, resides in the city of Carlsbad, California, and is a direct or indirect recipient of the real property described further herein.

7. Defendant Sarah Christine Peterson is Peterson's daughter and, on information and belief, resides in the city of Bozeman, Montana, and is a direct or indirect recipient of the real property described further herein.

8. Defendant Del Mar Capital Investors, LLC ("Del Mar Capital") is a California limited liability company with its principal place of business in Newport Beach, California. On information and belief, Del Mar Capital is the most recent transferee of the real property described further herein.

9. Although not named as a defendant herein, Kim H. Peterson ("Peterson") is an individual residing in the City of Del Mar, California, and at all times herein mentioned is or was trustee of The Peterson Family Trust dated April 14, 1992 ("The Peterson Family Trust"). Peterson and The Peterson Family Trust are defendants in the Peterson Clawback Action, a related action pending in this Court.

10. The Receiver is ignorant of the true names and capacities, whether individual, corporate, associate or otherwise, of Does 1 through 10. The Receiver is informed and believes, and based thereon alleges, that each fictitiously named defendant is the recipient of fraudulently transferred property, or was in some way responsible for, participated in or contributed to the matters and things of which the Receiver complains herein, and in some fashion, has legal responsibility therefor. When the exact nature and identity of such fictitious defendants' responsibility for, participation in and contribution to the matters and things herein alleged is ascertained, the Receiver will seek to amend this Complaint and all proceedings herein to set forth the nature of these defendants' identity.

11. The Receiver is informed and believes, and based thereon alleges, that Does 1 through 10, are principals, officers, agents and/or affiliates of each of the other Defendants, and directed, ratified, or caused the conduct and/or omissions alleged in this Complaint. The Receiver is further informed, and on that basis alleges, that Does 1 through 10 are the alter egos of the other Defendants, and as such are liable for the conduct and damages alleged against the other Defendants herein.

12. The Receiver is informed and believes, and based thereon alleges, that Defendants are, and at all times relevant herein were, the agents, principals, partners, co-conspirators and/or co-venturers of each other, that each of them acted within the course, scope, and authority of said relationships, and that, as a result, are jointly and severally liable for the acts alleged herein.

## III. FACTUAL ALLEGATIONS

### A. The CalPrivate Loan

13. On September 9, 2015, ANI License and CalPrivate Bank entered into a loan agreement (the "CalPrivate Loan Agreement"), under which CalPrivate agreed to fund up to $5 million in one or more loans to ANI License (the "Loan"). In exchange for the Loan, ANI License executed and delivered to CalPrivate a written promissory note (the "Note"), under which ANI License agreed to repay the $5-million principal, with interest, to CalPrivate. Concurrently, Peterson, in his individual capacity, executed and delivered to CalPrivate a written guaranty (the "Peterson Guaranty"), under which Peterson agreed to guarantee the full payment of the debt owed by ANI License to CalPrivate in connection with the Loan and the performance of all of ANI License's obligations under the Note. At the same time, The Peterson Family Trust, acting through Peterson in his capacity as trustee, executed and delivered a separate guaranty undertaking the same obligations, thereby binding both Peterson individually and the Trust to guarantee ANI License's indebtedness and performance (the "Peterson Trust Guaranty").

1. The Note was modified several times and, concurrently with each modification, Peterson and The Peterson Family Trust each executed and delivered to CalPrivate a written guarantor acknowledgement, under which they consented to ANI License's execution of the corresponding modification agreement and acknowledged his continuing liability under the Peterson Guaranty and Peterson Family Trust Guaranty (collectively, the "Peterson Guaranties").

14. Under the CalPrivate Loan Agreement, ANI License initially borrowed up to $5 million, secured by the Peterson Guaranty. That commitment was later increased to $7.5 million under a first modification and to $12.5 million under a second modification. Over the course of the Loan, CalPrivate advanced a total of approximately $40.5 million, of which about $28 million was repaid to principal and $2.9 million applied to interest. The last payment on the Loan was made on August 12, 2019, at which time the outstanding principal balance was $12.475 million.

### B. The Receiver's Appointment

On August 28, 2019, the Securities and Exchange Commission filed a civil enforcement action against defendants Gina Champion-Cain, ANI Development LLC, and relief defendant American National Investments, Inc. in this Court, commencing the SEC Action. On September 3, 2019, this Court appointed the Receiver as the permanent receiver for the Receivership Entities, with the full powers of an equity receiver.

### C. Assignment of CalPrivate's Claims

15. On February 17, 2023, the Receiver and CalPrivate entered into a settlement agreement (the "CalPrivate Settlement"), which the Court approved on April 24, 2023. Under the CalPrivate Settlement, the Receiver was assigned all of CalPrivate's claims against Peterson and his related entities and trusts, including claims under the Note and the Peterson Guaranties (as modified) (the "Assigned Claims"). Since CalPrivate's claims were assigned to her, the Receiver has not

received any payments from ANI License, Peterson, or any other third party on account of the Note (as modified) or the Peterson Guaranties (as modified).

### D.   The State Court Action

16.   On August 29, 2022, CalPrivate Bank filed a complaint against Peterson in the Superior Court for the County of San Diego (the "State Court"), commencing the action styled *CalPrivate Bank vs Peterson*, Case No. 37-2022-00035215-CU-BC-CTL (the "State Court Action").  CalPrivate's claims against Peterson included a breach of guaranty cause of action relating to the Peterson's nonpayment of the Loan as required by the Peterson Guaranty.

17.   On May 5, 2023, shortly after the CalPrivate Settlement was approved by the Court and CalPrivate's claims were assigned to her thereunder, the Receiver moved for an order substituting herself in as plaintiff of record in the State Court Action in the place of CalPrivate on the basis that she had acquired CalPrivate's interest in the causes of action at issue therein.  The State Court then entered a minute order on June 2, 2023, granting the Receiver's motion and substituting the Receiver in as plaintiff of record.

18.   On or about January 17, 2025, the Receiver filed a motion for summary adjudication on her claims against Peterson in the State Court Action (the "MSA").  On July 11, 2025, the State Court entered an order granting the MSA as to the breach of guaranty claim against Peterson in the amount of $5,901,061.30 (the "MSA Order").  However, the State Court did not enter judgment against Peterson, as its decision on the MSA did not dispose of all the claims between the Receiver and Peterson.  For this reason, the State Court has not yet entered judgment against Peterson on the breach of guaranty claim.  The Receiver's request to dismiss the remaining claims and have final judgment entered is pending.  A true and correct copy of the MSA Order is attached hereto as **Exhibit A**.

### E. The Peterson Clawback Action

19. On September 15, 2021, the Receiver commenced an action in this Court against Peterson, The Peterson Family Trust, and other affiliated entities in this Court, commencing the Peterson Clawback Action. On May 5, 2023, after the CalPrivate Settlement was approved by this Court, the Receiver amended her complaint in the Peterson Clawback Action to assert (a) a claim for breach of promissory note against ANI License on account of its nonpayment of the Note (as modified) (the "ANI License Note Claim") and (b) a claim for breach of guaranty against Peterson, in his capacity as trustee of The Peterson Family Trust, on account of the Peterson Family Trust's nonpayment on The Peterson Trust Guaranty (as modified) (the "1992 Trust Guaranty Claim").

20. On January 17, 2024, the Receiver moved for summary judgment on multiple claims, including the additional claims asserted in the Receiver's amended complaint (the "MSJ"). On January 9, 2025, the District Court entered an order granting the MSJ in part as to those two claims, granting summary judgment (a) in favor of the Receiver and against ANI License in the amount of $6,063,573.89 on the ANI License Note Claim, and (b) in favor of the Receiver and against The Peterson Family Trust in the amount of $6,063,573.89 on the 1992 Trust Guaranty Claim (the "MSJ Order"). The Court deferred adjudication on the remaining MSJ claims, and permitted supplemental briefing on discrete issues, including aspects of the Receiver's fraudulent transfer claims. A true and correct copy of the MSJ Order is attached hereto as **Exhibit B**.

21. The Receiver filed her supplemental brief on January 30, 2025, and Peterson filed his on February 20, 2025. As of the date of this Complaint, the Court has not yet issued a ruling on the supplemental submissions, and no final judgment has been entered.

## F. The Del Mar Property and Fraudulent Transfers

22. The Peterson Family Trust owned certain high-value residential property located at 271 Ocean View Avenue, Del Mar, California 92014 (the "Del Mar Property") at the time the MSJ Order was entered.

23. On or about November 6, 2024, Peterson, acting as trustee of The Peterson Family Trust, executed a quitclaim deed (the "Quitclaim Deed") transferring the Del Mar Property to his daughters, Defendants Sarah Christine Peterson and Claire Lauren Peterson, each as to an undivided 50% interest. The Quitclaim Deed was recorded on or about February 10, 2025, approximately one month after this Court entered the MSJ Order granting judgment in favor of the Receiver against The Peterson Family Trust. A true and correct copy of the Quitclaim Deed is attached hereto as **Exhibit C**.

24. Then, on or about July 29, 2025, shortly after the State Court entered the MSA Order, the Peterson Daughters executed a grant deed (the "Grant Deed") conveying their interests in the Del Mar Property to Del Mar Capital. Del Mar Capital was formed just a few weeks before on or about July 7, 2025. A true and correct copy of Del Mar Capital's articles of organization and a true and correct copy of the Grant Deed are attached hereto as **Exhibits D** and **E**, respectively.

25. The Del Mar Property is currently listed for sale and has been listed for sale with the same broker since May 21, 2024, currently reflecting an asking price of nearly $12 million. On information and belief, the listing has not been withdrawn or re-posted since April 22, 2025, despite the transfers to the Peterson Daughters and Del Mar Capital. True and correct screenshots of the Del Mar Property listing are attached hereto as **Exhibit F**.

## COUNT I – FRAUDULENT TRANSFER

### (Constructive and Actual Fraud)

### (Against All Defendants)

26. The Receiver incorporates herein each and every allegation contained in Paragraphs 1 through 25, inclusive, as set forth above.

27. The Peterson Family Trust, acting through Peterson as its trustee, executed and recorded a Quitclaim Deed transferring the Del Mar Property to his daughters, Defendants Sarah Christine Peterson and Claire Lauren Peterson ("Transfer 1"). Sarah and Claire Peterson (together, the "Peterson Daughters") thereafter executed and recorded a Grant Deed conveying the Del Mar Property to Defendant Del Mar Capital ("Transfer 2," and together with Transfer 1, the "Del Mar Property Transfers"). Defendants Sarah Peterson, Claire Peterson, and Del Mar Capital received the Del Mar Property as initial, immediate, or mediate transferees of The Peterson Family Trust.

28. The Del Mar Property Transfers were made to Peterson's immediate family members—insiders within the meaning of Cal. Civ. Code § 3439.04(b)(1)—and then to a newly formed entity. Both transfers occurred shortly after adverse rulings in ongoing litigation against Peterson and The Peterson Family Trust, including this Court's January 9, 2025 MSJ Order holding The Peterson Family Trust liable for $6,063,573.89 and the State Court's July 11, 2025 MSA Order holding Peterson liable for $5,901,061.30.

29. The timing of the Del Mar Property Transfers (two transfers within six months of each other, both recorded within weeks of summary judgment rulings against Peterson and The Peterson Family Trust), coupled with the insider nature of the transferees involved, strongly evidences actual intent to hinder, delay, or defraud creditors of Peterson and The Peterson Family Trust, including the receivership estate, within the meaning of Cal. Civ. Code § 3439.04(a)(1).

30. On information and belief, The Peterson Family Trust received no reasonably equivalent value from the Peterson Daughters in connection with Transfer 1, and the Peterson Daughters received no reasonably equivalent value from Del Mar Capital in connection with Transfer 2, further evidencing actual fraudulent intent under Cal. Civ. Code § 3439.04(b)(8), and supporting constructive fraudulent transfer under sections 3439.04(a)(2) and 3439.05.

31. On information and belief, The Peterson Family Trust, acting through Peterson as trustee, was insolvent at the time of Transfer 1, or became insolvent as a result thereof, and reasonably should have believed it would incur debts beyond its ability to pay as they became due.

32. On information and belief, notwithstanding the purported changes in title, Peterson has maintained direct or indirect control over the Del Mar Property, either in his individual capacity or as trustee of The Peterson Family Trust.  This continued control is evidenced by the fact that the Del Mar Property has remained continuously listed for sale without interruption or re-listing and with the same broker despite the recorded transfers, indicating that no genuine change in possession or authority over the property has occurred and constituting a badge of fraud under Cal. Civ. Code § 3439.04(b)(2).

33. As a consequence, the Del Mar Property Transfers constitute actual and constructively fraudulent transfers (or voidable transactions) under California's Uniform Voidable Transactions Act, Cal. Civ. Code § 3439 *et seq.*, and are subject to avoidance and other remedies provided by statute.

## IV.   PRAYER FOR RELIEF

WHEREFORE, the Receiver prays for judgment in her favor and against Defendants, and each of them, as follows:

**On Count I:**

1. Avoidance of the Del Mar Property Transfers pursuant to Cal. Civ. Code § 3439.07(a)(1), to the extent necessary to satisfy the receivership estate's claims;

2. Injunctive relief prohibiting Defendants from transferring, encumbering, or otherwise disposing of the Del Mar Property pending resolution of this action, pursuant to Cal. Civ. Code § 3439.07(a)(3)(A); and

3. Such other and further relief as the Court deems just and proper, including "any other relief the circumstances may require" under Cal. Civ. Code § 3439.07(a)(3)(C).

Dated:  August 29, 2025

ALLEN MATKINS LECK GAMBLE MALLORY & NATSIS LLP

By:  *s/ Edward G. Fates*
DAVID R. ZARO
EDWARD G. FATES
MATTHEW D. PHAM
Attorneys for Plaintiff
KRISTA FREITAG, Receiver