DAVID R. ZARO (BAR NO. 124334)
MATTHEW D. PHAM (BAR NO. 287704)
ALLEN MATKINS LECK GAMBLE
    MALLORY & NATSIS LLP
865 South Figueroa Street, Suite 2800
Los Angeles, California 90017-2543
Phone: (213) 622-5555
Fax: (213) 620-8816
E-Mail: dzaro@allenmatkins.com
        mpham@allenmatkins.com

EDWARD G. FATES (BAR NO. 227809)
REBECCA H. WILLIAMS (BAR NO. 328320)
ALLEN MATKINS LECK GAMBLE
    MALLORY & NATSIS LLP
One America Plaza
600 West Broadway, 27th Floor
San Diego, California 92101-0903
Phone: (619) 233-1155
Fax: (619) 233-1158
E-Mail: tfates@allenmatkins.com
        bwilliams@allenmatkins.com

Attorneys for Plaintiff
KRISTA FREITAG, Receiver

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| KRISTA FREITAG, Court-appointed permanent receiver for ANI Development, LLC, American National Investments, Inc., and their subsidiaries and affiliates,,<br><br>Plaintiff,<br><br>vs.<br><br>SARAH CHRISTINE PETERSON, an individual; CLAIRE LAUREN PETERSON, an individual; DEL MAR CAPITAL INVESTORS LLC, a California limited liability company; and DOES 1 through 10, inclusive,<br><br>Defendants. | Case No. 3:25-cv-02257-TWR-AHG<br><br>**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF RECEIVER'S MOTION FOR APPROVAL OF SETTLEMENT BETWEEN RECEIVER AND DEL MAR CAPITAL INVESTORS, LLC**<br><br>Date: April 2, 2026<br>Time: 1:30 p.m.<br>Ctrm: 14A<br>Judge Hon. Todd W. Robinson |

Plaintiff Krista Freitag (the "Receiver" or "Plaintiff"), the Court-appointed permanent receiver for ANI Development, LLC, American National Investments, Inc., and their subsidiaries and affiliates (collectively, the "Receivership Entities"), submits this Memorandum of Points and Authorities in support of her Motion for Approval of Settlement ("Motion") with Del Mar Capital Investors, LLC ("DMCI").

## I. INTRODUCTION

This case involves a transparent attempt by Kim Peterson ("Peterson"), as Trustee of the Peterson Family Trust Dated April 14, 1992 ("Trust") to take a valuable asset – the luxury residential real property located at 271 Ocean View Drive in Del Mar, California ("Property") – and transfer it out of the reach of the Receiver, shortly before judgment was entered in favor of the Receiver and against the Trust. Peterson orchestrated two fraudulent transfers of title to the Property – the first to his two daughters, Sarah and Claire Peterson ("Peterson Daughters"), and the second from the Peterson Daughters to Del Mar Capital Investors, LLC ("DMCI"). Neither of these transfers were for anything close to full value and would be summarily struck down as fraudulent transfers via a motion for summary judgment.

Nevertheless, in an effort to keep costs down and find the most efficient path to recovery for the receivership estate, the Receiver has reached a proposed settlement agreement with DMCI, pursuant to which the Property will be sold (by DMCI through a licensed broker and in consultation with the Receiver) and the net proceeds from the sale (after all mortgages and other seller obligations are paid and DMCI is reimbursed for its costs, plus a preferred return) will go to the receivership estate and be applied to reduce the receivership estate's judgments against the Trust.

## II. BACKGROUND FACTS

The Property, which is Peterson's residence, was owned by the Trust since 2003. The Property was listed for sale (by Peterson, as Trustee of the Trust) starting in 2024 with a list price of $12.45 million. The list price had been reduced multiple

times and, as of the date this action was filed, was $11.5 million. The Receiver's understanding is that there are two mortgages on the Property with a combined balance owed of approximately $4.66 million. Declaration of Krista Freitag filed herewith ("Freitag Decl."), ¶ 2.

The first transfer of the Property was made for no consideration from the Trust to the Peterson Daughters. The transfer was recorded in February 2025, about one month after the District Court granted summary judgment in favor of the Receiver and against the Trust in the amount of $6.06 million. *Freitag v. Peterson*, Case No. 21-cv-1620-TWR-AHG, Dkt. 88. The Receiver understands that Peterson continued to live at the Property after the transfer and the Property continued to be listed for sale with the same broker. In other words, nothing materially changed with respect to the Property, except who held title. Freitag Decl., ¶ 3.

The second transfer was made in August 2025, shortly after the San Diego Superior Court granted summary judgment in favor of the Receiver and against Kim Peterson personally in the amount of $5.9 million. This time, the Peterson Daughters transferred the Property to Del Mar Capital Investors, LLC ("DMCI"). But the transfer was not an ordinary transfer of property for market value. The agreement was essentially that DMCI would hold title to the Property, pay the mortgages until the Property could be sold, and then be reimbursed (with interest and a preferred return) from the sale proceeds. Pursuant to documents provided to the Receiver, DMCI committed to pay $5.5 million as the "purchase price" for the property, but $4.6 million of that amount was allocated to pay off the mortgages if the lender declared a default (which has not happened to date) and only $870,000 was paid at closing. Freitag Decl., ¶ 4.

Under the transaction with DMCI, once the Property was sold, Peterson (through his daughters) would receive the remainder of the net sale proceeds after the mortgages and DMCI were paid. The Receiver understands that Peterson has continued to live at the Property after the transfer pursuant to a nine-month lease

between DMCI, as owner, and the Peterson Daughters, as tenants. Pursuant to documents provided to the Receiver, the Peterson Daughters each received $75,000 from escrow from the transaction with DMCI, which amounts came out of the $870,000 paid by DMCI. The Property remained listed for sale with the same broker both before and after the transfer. Although title changed hands, nothing materially changed in terms of possession of the Property. This transaction is akin to a short-term loan in which DMCI took title to the Property as collateral to secure its right to be reimbursed with 10% interest and to receive a specified preferred return depending on the length of time to complete a sale of the Property. Peterson (through his daughters) retained the right to take title to the Property back from DMCI through a "buyout" by fully reimbursing DMCI with interest and a specified preferred return. Freitag Decl., ¶ 5.

On November 4, 2025, the Court entered final judgment in the Receiver's related fraudulent transfer action against Peterson and his entities and trusts. Case No. 21-cv-01620-TWR-AHG, Dkt. 99. The final judgment includes $8.4 million owed by Peterson and all of his entities and trusts, jointly and severally, as well as $6.06 million owed by the Trust and another Peterson entity, ANI License. Therefore, the Trust now owes the receivership estate over $14.46 million. The Receiver obtained an Abstract of Judgment and recorded it, creating a judgment lien in favor of the receivership estate against all real property of the judgment debtors in San Diego County.

Since this action was filed, DMCI, as owner of the Property, has taken control of the listing agreement with the broker and has been in regular communication with the Receiver regarding the marketing process, mortgage payments, property taxes and other issues relating to the Property. The Receiver understands that the Peterson Daughters have defaulted on their obligations under their agreements with DMCI, including by failing to pay property taxes due in December 2025. DMCI is in the process of initiating an unlawful detainer action in state court against the Peterson

Daughters as tenants to forcibly eject them (and Peterson) from the Property. Freitag Decl., ¶ 6.

### III. THE PROPOSED SETTLEMENT

The Settlement Agreement negotiated between DMCI and the Receiver ("Agreement") is attached to the Freitag Decl. as Exhibit A. Its terms are summarized as follows:

- The Agreement is subject to Court approval.
- DMCI shall market the Property for sale through a licensed broker and shall consult with the Receiver on all key decisions.
- When appropriate, DMCI shall engage unlawful detainer counsel and promptly pursue an unlawful detainer action and writ of possession against the Peterson Daughters, as tenants, and all occupants of the Property (including Peterson and his wife).
- Once the Property is sold, the sale proceeds shall be applied to pay (a) all seller obligations, including the mortgages, taxes, title fees, and broker commission, (b) to reimburse DMCI for its actual costs, plus 10% interest and a specified (reduced) preferred return depending on how long it takes to complete the sale, and (c) to the receivership estate (which amount will be applied to the judgment amounts owed to the receivership by the Trust).
- Upon receipt of the net sale proceeds by the receivership estate, all claims in this action against DMCI will be dismissed with prejudice.

### IV. DISCUSSION

**A.    Approval of Settlement**

"The power of a district court to impose a receivership or grant other forms of ancillary relief does not in the first instance depend on a statutory grant of power from the securities laws. Rather, the authority derives from the inherent power of a court of equity to fashion effective relief." *SEC v. Wencke*, 622 F.2d 1363, 1369

(9th Cir. 1980). The "primary purpose of equity receiverships is to promote orderly and efficient administration of the estate by the district court for the benefit of creditors." *SEC v. Hardy*, 803 F.2d 1034, 1038 (9th Cir 1986). As the appointment of a receiver is authorized by the broad equitable powers of the court, any distribution of assets must also be done equitably and fairly. *See SEC v. Elliot*, 953 F.2d 1560, 1569 (11th Cir. 1992).

District courts have the broad power of a court of equity to determine the appropriate action in the administration and supervision of an equity receivership. *See SEC v. Capital Consultants, LLC*, 397 F.3d 733, 738 (9th Cir. 2005). The Ninth Circuit explained:

> A district court's power to supervise an equity receivership and to determine the appropriate action to be taken in the administration of the receivership is extremely broad. The district court has broad powers and wide discretion to determine the appropriate relief in an equity receivership. The basis for this broad deference to the district court's supervisory role in equity receiverships arises out of the fact that most receiverships involve multiple parties and complex transactions. A district court's decision concerning the supervision of an equitable receivership is reviewed for abuse of discretion.

*Id.* (citations omitted); *see also CFTC. v. Topworth Int'l, Ltd.*, 205 F.3d 1107, 1115 (9th Cir. 1999) ("This court affords 'broad deference' to the court's supervisory role, and 'we generally uphold reasonable procedures instituted by the district court that serve th[e] purpose' of orderly and efficient administration of the receivership for the benefit of creditors.").

A federal equity receiver's power to compromise claims is subject to court approval. With regard to settlements entered into by a federal equity receiver, the Court's supervisory role includes reviewing and approving those settlements in light of federal court policy to promote settlements before trial. *See* Fed. R. Civ. P. 16(c), Advisory Committee Notes.

Federal courts of equity may look to bankruptcy law for guidance in the administration of receivership estates. *See SEC v. Capital Consultants, LLC*,

397 F.3d 733, 745 (9th Cir. 2005); *SEC v. Am. Capital Invs., Inc.*, 98 F.3d 1133, 1140 (9th Cir. 1996); *SEC v. Basic Energy & Affiliated Res.*, 273 F.3d 657, 665 (6th Cir. 2001). A bankruptcy court may approve a compromise of claims asserted by or against the estate if the compromise is "fair and equitable." *Woodson v. Fireman's Fund Ins. Co. (In re Woodson)*, 839 F.2d 610, 620 (9th Cir. 1988). The approval of a proposed compromise negotiated by a court appointed fiduciary "is an exercise of discretion that should not be overturned except in cases of abuse leading to a result that is neither in the best interest of the estate nor fair and equitable for the creditors." *In re MGS Mktg.*, 111 B.R. 264, 266-67 (B.A.P. 9th Cir. 1990).

The Court has great latitude in approving compromises. In passing on the proposed settlement, the Court should consider the following:

    a.    The probability of success in litigation;

    b.    The difficulties, if any, to be encountered in the matter of collection;

    c.    The complexity of the litigation involved and the expense, inconvenience, and delay necessarily attending; and

    d.    The paramount interest of the creditors and a proper deference to their reasonable views in the premises.

*In re Woodson*, 839 F.2d at 620.

Here, the Settlement Agreement will maximize the net recovery from the Property for the receivership estate by getting the Property sold sooner than it otherwise could be through litigation and by eliminating substantial litigation and judgment enforcement costs. Although the Receiver believes the receivership estate's fraudulent transfer claims are very strong and would likely prevail at summary judgment, the result of a judgment would be to avoid the two transfers and restore the Property to the Trust. In that event, the Receiver would then have to foreclose on the Property by enforcing the receivership estate's judgment lien against the Trust, which process would be complicated by the fact that there are two senior liens (mortgages) on the Property that would need to be paid off ahead of the

receivership estate.  There is also substantial risk that, while this action proceeded to judgment, the lender (City National Bank) would declare a default and commence a foreclosure of its own, meaning the Receiver could have to intervene and possibly make payments from the receivership to the lender.  Freitag Decl., ¶ 7.

Moreover, although DMCI did not pay market value for the Property, it has advanced substantial sums toward the Property (mortgage payments, delinquent property taxes, and other costs), for which it would likely be entitled to be reimbursed.  The Receiver would also likely have to file an unlawful detainer action to eject Peterson from the Property.  Freitag Decl., ¶ 8.

In contrast, because DMCI now holds title to the Property and is prepared to settle with the Receiver, it can initiate an unlawful detainer action in the near term in light of the defaults, and should be able to get the Property sold substantially sooner.  The Receiver and DMCI have negotiated a reduced preferred return to DMCI from the sale proceeds that still fully incentivizes DMCI to get the Property sold (in consultation with the Receiver), but that also preserves a greater share of the net sale proceeds for the receivership estate.  The Receiver therefore believes the proposed settlement is in the best interests of the receivership estate and asks that it be approved.  Freitag Decl., ¶ 9.

## V.　CONCLUSION

For the foregoing reasons, the Receiver requests that the Settlement Agreement attached to the Freitag Decl. as Exhibit A be approved.

Dated:  February 19, 2026　　　　　ALLEN MATKINS LECK GAMBLE
　　　　　　　　　　　　　　　　　　MALLORY & NATSIS LLP

By: _____*/s/ Edward G. Fates*_____
　　DAVID R. ZARO
　　EDWARD G. FATES
　　MATTHEW D. PHAM
　　Attorneys for Plaintiff
　　KRISTA FREITAG, Receiver