# EXHIBIT A

# EXHIBIT A

## SETTLEMENT AGREEMENT AND MUTUAL RELEASE

This Settlement Agreement and Mutual Release ("Agreement") is entered into by and between Krista Freitag, in her capacity as the Court-Appointed Receiver for ANI Development, LLC, American National Investments, Inc., and their subsidiaries and affiliates (the "Receiver"), and Del Mar Capital Investors, LLC ("DMCI," each of which is a "Party" and collectively, the "Parties"), with regard to the following facts:

### RECITALS

A.    WHEREAS, title to the property located at 271 Ocean View Avenue in Del Mar, California ("Property") was held by The Peterson Family Trust dated April 14, 1992 ("1992 Peterson Trust") for many years;

B.    WHEREAS, on January 9, 2025, the United States District Court for the Southern District of California ("District Court") granted summary judgment in favor of the Receiver and against the 1992 Peterson Trust in the amount of $6,063,573.89 ("Federal MSJ Order");

C.    WHEREAS, on February 10, 2025, a quitclaim deed was recorded transferring title to the Property from the 1992 Peterson Trust to Sarah Peterson and Claire Peterson (the "Peterson Sisters");

D.    WHEREAS, on July 11, 2025, the Superior Court for the County of San Diego granted summary judgment in favor of the Receiver and against Kim Peterson personally in the amount of $5,901,061.30 ("State MSJ Order");

E.    WHEREAS, on August 4, 2025, the Peterson Sisters transferred title to the Property to DMCI pursuant to a California Residential Purchase Agreement and Joint Escrow Instructions and Addendum thereto ("Purchase Contract"), under which DMCI, subject to restrictions, would bring and keep the mortgages for the Property current until such time as it could be sold.  From the sale, Claire Peterson received $75,745.18, and Sarah Peterson received $75,745.19.  At the time DMCI sells the Property (the "Sale"), the amounts payable to it are as set forth in Sections 3 and 4 hereunder.

F.    WHEREAS, the agreements signed by DMCI and the Peterson Sisters included a Residential Lease After Sale ("Lease"), pursuant to which the Peterson Sisters are in possession of the Property until such time as the Property is sold.

G.    WHEREAS, when the Receiver learned of the February 10, 2025 transfer of title by the Peterson Trust to the Peterson Sisters, and the Peterson Sisters transfer of title to DMCI on August 4, 2025 as set forth above (and collectively, the "Title Transfers"), she filed a complaint against DMCI and the Peterson Sisters in District Court asserting that the Title Transfers were fraudulent transfers that should be avoided and title to the property restored to the 1992 Peterson Trust ("Fraudulent Transfer Action").  DMCI denies that the Title Transfers concerning the Property were fraudulent transfers.

H.    WHEREAS, DMCI has represented that none of the litigation or claims prosecuted by the Receiver against the 1992 Peterson Trust, Kim Peterson, or the other Peterson entities was ever disclosed to it prior to being served with the Fraudulent Transfer Action.

I.      WHEREAS, DMCI asserts that it has claims against the Peterson Sisters, the 1992 Peterson Trust, Kim Peterson, and the other Peterson entities for their failure to disclose the Receiver's litigation and related claims against them, including the Federal MSJ Order and State MSJ Order, and that DMCI has defenses to the Fraudulent Transfer Action as well.

J.      WHEREAS, the Receiver and DMCI now wish to settle and resolve all claims, disputes, liabilities, obligations, judgments, and debts between them on the terms set forth in this Agreement.

NOW, THEREFORE, THE PARTIES HEREBY AGREE AS FOLLOWS:

**AGREEMENT**

1.      <u>Court Approval</u>.  This Agreement shall be effective only upon entry of an order by the District Court approving it.  Once the Agreement has been fully executed, the Receiver and DMCI shall promptly seek approval of it from the District Court.

2.      <u>Sale of the Property</u>.  DMCI shall market the Property for sale (the "Sale") and DMCI and the Receiver shall discuss key matters, such as the choice of broker, broker commission, list price, offers received, counteroffers, sale terms, escrow, title and other key aspects of the sale process and prospective sale transaction.  This is a mutual obligation between the Receiver and DMCI, and not unilateral as to DMCI.  Neither Kim Peterson, the 1992 Peterson Trust, the Peterson Sisters, and other individuals, entities or trusts associated with the Petersons shall have any right to participate in decisions relating to the marketing and sale of the Property.

3.      <u>Unlawful Detainer Action And Fees & Costs Recapture</u>.  DMCI has hired Kimball Tirey & St. John LLP ("KTS") as unlawful detainer counsel, and Receiver approves of this selection.  DMCI has already instructed KTS to bring the unlawful detainer action, which KTS is in the initial stages of doing now, including drafting eviction notices, so as to remove the Peterson Sisters, Kim Peterson, Laurie Peterson (and anyone else occupying the Property), and to move as expeditiously as possible to obtain a writ of possession such that the San Diego County Sheriff or other levying officer can remove all occupants from the Property.  DMCI and the Receiver agree that delivering possession of the Property to the buyer at closing is of high priority.  DMCI and the Receiver shall have full authority to discuss the eviction with KTS, or any successor unlawful detainer counsel.  DMCI, the Receiver and the respective agents of the both of them shall not be liable for any inability to evict persons at the Property, whatever the cause or reason, including, the actions of KTS or any successor counsel's handling of the unlawful detainer action, including acts of alleged malpractice and malfeasance, nor for any stalling or delaying tactics employed by the occupants, including any appeals or challenges brought therewith.  DMCI and the Receiver shall keep each other reasonably informed of the status of the unlawful detainer lawsuit.  DMCI's actual legal fees and costs necessary to deliver possession of the Property to the buyer at closing shall be reimbursed to it from the sale proceeds at closing of the Sale.  In the event the unlawful detainer process is delayed due to such matters as bankruptcy or appellate filings, DMCI shall instruct KTS (or other bankruptcy or appellate counsel) to promptly take actions necessary to allow the unlawful detainer action and/or enforcement of the writ of

possession to proceed, and this matter shall be discussed with the buyer to see if the buyer will agree to close subject to these issues.

4. <u>Order Of Distribution of The Sale Proceeds from Escrow</u>.  Upon the Sale of the Property by DMCI to the buyer, payments shall be made in *only* this sequence: (1) escrow shall first deduct and pay all seller obligations associated with the Property, including mortgages, taxes, title, escrow, recording fees, and broker commissions (the "Seller Obligations"); (2) from the amount remaining after the Seller Obligations are paid, escrow shall next deduct and pay to DMCI all amounts actually incurred in section 3 and owed and disclosed in section 4 herein from the Sale (the "DMCI Proceeds"); and (3) after deducting the Seller Obligations and DMCI Proceeds, escrow shall pay all remaining Sale proceeds to the receivership estate (the "Receivership Proceeds"), and applied to the judgment amounts owed to the receivership by the 1992 Peterson Trust. Neither Kim Peterson, the 1992 Peterson Trust, the Peterson Sisters, nor any other individuals, entities or trusts associated with the Petersons shall receive any portion or share of the proceeds from the sale of the Property, nor will any of them have any claims, potential claims, offsets or any other basis in law or in equity to halt, delay, block, suspend or otherwise prevent DMCI from receiving its DMCI Proceeds.

    a. <u>Funds To Be Disbursed To DMCI From Escrow Upon The Sale</u>.  Reference is made to DMCI's purchase of the Property on July 31, 2025, in which DMCI paid, cured or advanced the following sums of money, all of which is to be paid to DMCI upon a Sale, plus simple interest at 10% per annum from July 31, 2025 to the date of the Sale to a buyer:

| | | |
|---|---|---|
| Title Charges | $ | 5,666.00 |
| | $ | 7,800.00 |
| Recording | $ | 20.00 |
| | $ | 25.00 |
| | $ | 957.00 |
| | | |
| Misc. | $ | 37,333.20 |
| | $ | 74.95 |
| | $ | 96,500.00 |
| | $ | 2,000.00 |
| | $ | 425.00 |
| | $ | 123,948.53 |
| | $ | 32,052.97 |
| | $ | 280,638.12 |
| | $ | 100,015.80 |
| | $ | 75,745.18 |
| | $ | 75,745.19 |
| | $ | <u>31,038.06</u> |
| | $ | **869,985.00** |

b.  Preferred Return Paid To DMCI From Escrow Upon The Sale.

DMCI is entitled to be paid from the Sale of the Property the following "Preferred Return" from July 31, 2025, and up to the next fifteen consecutive months thereafter.

| Hold Period | Preferred Return |
|---|---|
| 1 month | $15,000 |
| 2 months | $25,000 |
| 3 months | $35,000 |
| 4 months | $44,950 |
| 5 months | $55,100 |
| 6 months | $65,250 |
| 7 months | $75,400 |
| 8 months | $85,500 |
| 9 months | $95,700 |
| 10 months | $105,850 |
| 11months | $116,000 |
| 12months | $126,150 |
| 13 months | $136,300 |
| 14 months | $146,450 |
| 15 months | $156,600 |

c.  Any Advances Paid By DMCI.

To the extent it becomes necessary for DMCI to advance additional funds, including to prevent a foreclosure by satisfying any lien or indebtedness of any existing senior deeds of trust against the Property, or to prevent a new lien from being recorded, or to cure a default under any agreement, notice shall first be provided to the Receiver, all relevant communications with the applicable lienholder or creditor shall be shared with the Receiver, and all such advanced funds, plus the costs to obtain such funds and other future costs associated with the advancing of funds, including legal fees, shall be fully reimbursed to DMCI at the time of Sale.  DMCI shall provide proof to the Receiver of all such costs incurred and funds advanced hereunder before the Sale.

If the Property has not sold in the first 12 months starting from November 1, 2025, then beginning on the 13th month, and for a maximum total of four months (e.g., months 13-16, inclusive), then DMCI will make the payments on these senior loans, plus payments for the insurance and real property taxes, which shall be included in the amounts to be reimbursed to DMCI.

d.  $50,000 Preferred Return Payment To DMCI.

In the event that a Sale does not take place by November 1, 2026, then DMCI shall be entitled to an additional payment of $50,000 to be paid at closing.

5. <u>Dismissal of the Fraudulent Transfer Action</u>.  Promptly upon confirmation of receipt of the Receivership Proceeds, the Receiver shall cause all claims in the Fraudulent Transfer Action against DMCI to be dismissed with prejudice.  In the meantime, and once this Agreement has been approved by the District Court, the Parties shall stipulate to take such steps as are reasonably necessary to obtain a stay of the Fraudulent Transfer Action such that the Parties can work to complete the sale of the Property and the payments required hereunder without incurring litigation expenses associated with the Fraudulent Transfer Action.

6. <u>Release of Claims In Favor of DMCI</u>.  Other than obligations created by this Agreement or otherwise provided for herein, the Receiver (solely in her capacity as Receiver), for herself, her agents, any trusts from which she holds or will obtain any beneficial interests or rights, employees, partners, directors, officers, affiliates, subsidiaries, successors and assigns, hereby releases, discharges, excuses, and waives all claims, causes of action, obligations, liabilities, or debts that they had, have, or may have against DMCI and its managers, members and their family members and agents, including financial and legal advisors, whether known or unknown, asserted or unasserted, liquidated or contingent, relating to the Property, transfers of title to the Property, the Purchase Agreement, the Lease, and the Fraudulent Transfer Action.

7. <u>Release of Claims In Favor of Receiver</u>.  Other than obligations created by this Agreement or otherwise provided for herein, DMCI, for itself, its agents, employees, partners, directors, officers, affiliates, subsidiaries, successors and assigns, hereby releases, discharges, excuses, and waives all claims, causes of action, obligations, liabilities, or debts that they had, have, or may have against the Receiver (solely in her capacity as Receiver), and her agents, including financial and legal advisors, whether known or unknown, asserted or unasserted, liquidated or contingent, relating to the Property, transfers of title to the Property, the Purchase Agreement, the Lease, and the Fraudulent Transfer Action.

8. <u>Waiver of California Civil Code Section 1542</u>.  In connection with the release of unknown Claims, the Receiver (solely in her capacity as Receiver), and the receivership estate and DMCI knowingly and intentionally and with advice of legal counsel of their own selection waive the provisions and protections of California Civil Code section 1542, and any similar provisions of other jurisdictions.  Civil Code section 1542 provides:

> A general release does not extend to claims that the creditor or releasing party does not know or suspect to exist in his or her favor at the time of executing the release and that, if known by him or her, would have materially affected his or her settlement with the debtor or released party.

9. <u>Voluntary Signing and Authority</u>.  Each of the Parties to this Agreement have executed this Agreement without any duress or undue influence.  Each of the Parties to this Agreement represents and warrants that they are duly authorized to execute this Agreement on behalf of themselves and all entities, trusts, benefit plans, and estates, as provided in the signature blocks below.

10.  <u>Independent Counsel</u>.  Each of the Parties to this Agreement acknowledges and agrees that they have been represented by independent counsel of their own choice throughout all negotiations which preceded the execution of this Agreement, that they executed and approved of this Agreement after consultation with said counsel, and that they shall not deny the validity of this Agreement on the ground that such Party did not have the advice of legal counsel.

11.  <u>Governing Law and Venue</u>.  This Agreement shall in all aspects be interpreted, enforced and governed by and under the laws of California, and Federal Equity Receivership law, and subject to the exclusive jurisdiction of this District Court.

12.  <u>Waiver/Amendment</u>.  No breach of any provision of this Agreement can be waived unless in writing.  Waiver of any one breach of any provision of this Agreement is not a waiver of any other breach of the same or of any other provision of this Agreement.  Any amendment of this Agreement may be made only by written agreement signed by the Parties.

13.  <u>Electronic Signatures and Counterparts</u>.  This Agreement may be executed by the Parties hereto electronically and/or in counterparts and, if so executed, each electronic copy and/or counterpart shall have the full force and effect of an original.

14.  <u>Entire Agreement</u>.  This Agreement constitutes the entire agreement between the Parties hereto pertaining to the subject matter contained herein.  No supplement, modification or amendment of this Agreement shall be binding unless executed in writing by all Parties.  Notwithstanding the foregoing, except as modified herein, the Purchase Agreement (including Addendum) and Lease remain in full force and effect.

15.  <u>Parties to Bear Own Costs</u>.  The Parties hereto shall each bear their own costs and attorneys' fees incurred in connection with the negotiation and documentation of this Agreement.

16.  <u>Notices</u>.  Notices to be provided hereunder shall be effective if sent to the following:

<u>To DMCI</u>:
Patrick J. D'Arcy, Esq.,
Patrick J. D'Arcy, APLC
1 Park Plaza, Suite 380
Irvine, CA 92614
(949) 988-7640
Fax (949) 988-7641
Email:  pat@patricklaw.net


<u>To the Receiver</u>:
Krista L. Freitag, Receiver c/o
Allen Matkins
600 W. Broadway, 27th Floor San
Diego, CA 92101 Attn: Ted Fates
Email: tfates@allenmatkins.com

KRISTA L. FREITAG, IN HER CAPACITY AS COURT-APPOINTED RECEIVER FOR ANI DEVELOPMENT, LLC, AMERICAN NATIONAL INVESTMENTS, INC., AND THEIR SUBSIDIARIES AND AFFILIATES

By:
KRISTA L. FREITAG, Receiver


DEL MAR CAPITAL INVESTORS, LLC


By:_____
KENAN C. THAYER, its Manager

KRISTA L. FREITAG, IN HER CAPACITY AS COURT-APPOINTED RECEIVER FOR ANI DEVELOPMENT, LLC, AMERICAN NATIONAL INVESTMENTS, INC., AND THEIR SUBSIDIARIES AND AFFILIATES

By: _____
KRISTA L. FREITAG, Receiver

DEL MAR CAPITAL INVESTORS, LLC

By: _____
KENAN C. THAYER, its Manager